Kenneth WILSON, Petitioner,

v.

William T. GRANT, Respondent.

No. 93–CV–73171–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 22, 1995.

Arthur J. Tarnow, Detroit, MI, for Kenneth Wilson.

Peter L. Trezise, Mich. Dept. of Atty. Gen., Habeas Corpus Div., Lansing, MI, for Gene Borgert.

Arthur E. D'Hondt, Peter L. Trezise, Mich. Dept. of Atty. Gen., Habeas Corpus Div., Lansing, MI, for William T. Grant.

### OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ZATKOFF, District Judge.

Petitioner filed the instant petition for Writ of Habeas Corpus. Respondent filed an answer, to which Petitioner responded. This matter is currently before the Court on Magistrate Judge Komives' Report and Recommendation of May 10, 1994, in which the Magistrate Judge recommends that the petition for writ of habeas corpus be denied.

After a thorough review of the court file, the respective parties' motions, the Report and Recommendation, and the Petitioner's objections to the report, this Court will adopt the Report and Recommendation and enter it as the findings and conclusions of this Court, with the following clarifications.

Petitioner contends that this Court dismissed his prior petition for writ of habeas corpus because Petitioner had failed to exhaust his state remedies. This Court's October 24, 1989, Memorandum Opinion and Order did contain language to that effect. However, in the October 24, 1989 Opinion, the Court was analyzing whether Petitioner had demonstrated cause for his procedural default at the state level, the reason that the Court denied Petitioner's writ on June 21, 1989. *See* June 21, 1989 Memorandum Opinion and Order. Thus, although Petitioner had, in fact, failed to exhaust his state reme-dies, the reason he had failed to do so was that he had committed procedural defaults. Accordingly, Magistrate Judge Komives correctly analyzed and recommended denial of Petitioner's present petition for writ of habeas corpus.

Therefore, IT IS HEREBY ORDERED that Kenneth Wilson's petition for writ of habeas corpus is DENIED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

KOMIVES, United States Magistrate Judge.

### I. RECOMMENDATION:

The Court should dismiss the petition for a writ of habeas corpus under Rule 9(b), Rules Governing Section 2254 Proceedings. In the alternative, the Court should deny the petition on the ground of procedural default.

### II. REPORT:

#### A.

1. On July 27, 1993, petitioner Kenneth Wilson filed a petition for writ of habeas corpus, seeking federal review of four issues allegedly invalidating his state court jury conviction on three counts of assault with intent to murder and one count of felony firearm.

2. On March 28, 1994, the Attorney General filed a forty-eight page answer in opposition to the petition, asserting in part that the petition should be dismissed because it was a second habeas application constituting an abuse of the writ and also because of procedural default.

3. On April 13, 1994, petitioner, who is represented by counsel, filed a response to the answer.

#### B.

1. The Attorney General's first argument, that the petition should be dismissed as an abuse of the writ because Wilson filed a prior petition in 1989 (Case 89–CV–71338–DT), is founded upon the opinion and order of Judge Zatkoff which dismissed this prior petition. Judge Zatkoff concluded that Wilson had not established cause for his procedural default in failing to obtain review by the Michigan Supreme Court of the denial of a delayed motion for new trial. This delayed motion for new trial had raised two grounds; first, a

claim that petitioner had not validly waived his right to a 12–person jury when one of twelve deliberating jurors was excused, and, second, that he had received ineffective assistance from both his trial and appellate counsel. Petitioner sought to raise these and other grounds for relief in his subsequent delayed application for leave to appeal which he submitted to the Michigan Court of Appeals on March 18, 1988 seeking review of the trial court's denial of his delayed motion for new trial. The Michigan Court of Appeals denied his application for leave to appeal in a form order entered on September 28, 1988. Petitioner did not obtain review by the Michigan Supreme Court and argued in his federal habeas petition that he was prevented from doing so in a timely fashion by his transfer from one prison to another.

His prior federal habeas petition raised the two grounds put forward in his delayed motion for new trial and also put forward other grounds: (1) Wilson asserted that his trial counsel was ineffective by failing to elicit testimony from him on the issue of intent (that he had no intent to kill), which, if accepted by the jury, would have led to conviction of a lesser-included offense, thus depriving him of a substantial defense. (2) Wilson asserted that he was denied due process when the trial judge gave an instruction on the defense of intoxication which shifted the burden of proof. (3) Wilson argued that the failure of the state courts to apply a 1987 decision of the Michigan Court of Appeals regarding a burden-shifting intoxication instruction denied him due process and equal protection. (4) Wilson argued that his trial counsel was also ineffective on appeal by raising a patently frivolous issue and failing to advance any of several available meritorious issues of error.

2. Wilson's current habeas petition puts forward four grounds for relief: first, that he was denied effective assistance of counsel during his trial by the failure of his attorney to (a) move to disqualify the judges of the Recorder's Court, (b) inform him that he would have been entitled to a mistrial if he did not agree to waiving the continued participation of one of the twelve jurors, and (c) object to the prosecutor's repeated reference to his silence at trial. Trial counsel was also ineffective when she elicited testimony about an alleged unrelated fight at the police station involving Wilson after he was arrested.

The second habeas ground alleges prosecutorial misconduct in two particulars: (a) comment on silence, and (b) appealing to the civic duty of jurors to convict. The third habeas ground alleges judicial misconduct or error in (a) threatening defense counsel with contempt, (b) coercing Wilson's waiver of the continued participation of the twelfth juror, and (c) refusing to allow cross-examination of a witness as to the possibility of the gun going off accidentally.

The fourth habeas ground is an assertion that appellate counsel was ineffective for failing to raise the foregoing issues on the appeal as of right.

### C.

1. Rule 9(b) of the Rules Governing Section 2254 Proceedings provides as follows:

(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

The Advisory Committee Note makes it clear that this rule is based largely on language in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The *Sanders* Court noted that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation.…" While the *Sanders* Court also stated that the action of the prisoner must be a deliberate withholding of a ground for relief in the first habeas petition, and the Advisory Committee would require a finding by the judge considering the second habeas petition that the failure to assert the new ground in the prior petition was "inexcusable," the Supreme Court has now refined this basis for considering whether the second petition constitutes an abuse of the writ. In *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198,

71 L.Ed.2d 379 (1982), the Supreme Court resolved a conflict in the circuits by reversing a Sixth Circuit holding which allowed federal courts to consider the exhausted claims in a "mixed petition" which put forward both exhausted and unexhausted grounds for relief. The Court noted, in a portion of the opinion expressing the view of six justices, that "strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition." 455 U.S. at 520, 102 S.Ct. at 1204. The Court continued:

> To the extent that the exhaustion requirement reduces piecemeal litigation, both the courts and the prisoners should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough review.

455 U.S. at 520, 102 S.Ct. at 1204.

The next portion of the Court's opinion was joined in by only four of the six justices in the majority. This portion expressed the view of the four that a prisoner who chose to amend a mixed petition and ask for immediate federal adjudication only of exhausted claims "would risk forfeiting consideration of his unexhausted claims in federal court." This was so because of Rule 9(b). A prisoner who unsuccessfully pursued his exhausted claims after amending his first petition, then later exhausted his remaining claims in state court "risks dismissal of subsequent federal petitions." 455 U.S. at 521, 102 S.Ct. at 1205.

2. Finally, in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Supreme Court, after noting that a claim need not have been *deliberately* abandoned in an earlier habeas proceeding, but would constitute an abuse of the writ if not included in the first petition through inexcusable neglect, held that henceforth abuse-of-the-writ accusations should be judged by the same standard used to determine whether to excuse a habeas petitioner's state procedural defaults, i.e., a cause and prejudice standard.

■ 3. Had Wilson's first habeas petition been dismissed for failure to exhaust his claims, his second habeas petition would not be subject to dismissal under Rule 9(b).

That is made clear by the plain language of the rule as well as by *Rose v. Lundy, supra.*

■ 4. The result is different where the first petition was denied because the claims were held to have been procedurally defaulted during the course of state court proceedings. There is no logic in the proposition that a habeas petitioner who presents procedurally defaulted claims in the first proceeding may escape the impact of Rule 9(b) whereas a habeas petitioner who presents issues not barred by procedural default will feel the force of the rule.

■ If, however, a habeas petitioner whose first application is denied on procedural default grounds manages to obtain, on further request to his state courts, an adjudication of his claims on their constitutional merits, a second habeas petition should be considered on the merits. In such a case, the basis for the first denial of habeas relief has been destroyed by the state itself. Since the procedural default rule, like the exhaustion rule, is intended to pay homage to state-federal comity, the reason for refusing federal review evaporates as well.

5. In the case at bar, Recorder's Court Judge Clarice Jobes clearly ruled on the merits of Wilson's claims presented in his motion for relief from judgment in 1992, with the exception of the claim that appellate counsel was ineffective. A copy of her opinion is attached to this report. However, the Michigan Court of Appeals, in denying review of her decision, flatly stated that "defendant has failed to demonstrate good cause for prior failure to raise the issues presented. MCR 6.508(D)(3)."

6. Counsel for Wilson argues that he can and has shown both cause and prejudice for his failure to include the grounds presently put forward in his first habeas petition. However, counsel's argument focuses on the allegedly ineffective assistance Wilson received from the lawyer who handled the appeal as of right. That is a separate and distinct issue. Wilson did not have a constitutional right to counsel in connection with his habeas petition. *See*, e.g., *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d

341 (1974). Rule 8(c) of the Rules Governing Section 2254 requires a federal court to appoint counsel for an indigent habeas petitioner only "[i]f an evidentiary hearing is required...."

■ It is noteworthy, as summarized above, that Wilson, proceeding in *pro per*, put forward in his first habeas petition the two grounds raised in his delayed motion for new trial, and at least four other grounds (*supra*, at p. 3). Thus, Wilson was apparently capable of putting forward for discussion grounds not raised by his appellate counsel. His present counsel has not therefore demonstrated "cause" for Wilson's failure to raise the grounds for habeas relief now put forward, if counsel is contending that these are, indeed, new grounds.[1]

■ 7. Wilson's counsel addresses the issue of ineffective assistance of appellate counsel as one which, if proved, would establish cause for the state court procedural default as well as for his default in not putting forward certain grounds, or factors in support of certain grounds, in his first habeas petition. However, Wilson clearly advanced a claim of ineffective assistance of appellate counsel in his first habeas petition. Judge Zatkoff ruled that Wilson had procedurally defaulted in state court on that claim by not seeking review in the Michigan Supreme Court of his second rejection by the Michigan Court of Appeals. Judge Clarice Jobes, while ruling on the merits of Wilson's other claims, specifically ruled that this claim, *unlike* the others, was not open for review. The Michigan Court of Appeals ruled that this claim (*and* all the others) was not open for review because of procedural default *and* because Wilson had not shown cause for this default.

Even if one were to view this claim on the merits, the outcome would not be changed. Judge Jobes, after all, rejected Wilson's other claims on the merits. There is no reason to doubt that the Michigan Court of Appeals would have reached the same result in the appeal as of right.

**1.** A comparison of the two habeas petitions indicates substantial, though not complete, overlap as to *grounds*, although additional factors are put

## D.

■ 1. In the alternative, should the Court not dismiss the petition under Rule 9(b), it should deny it because the Michigan Court of Appeals has clearly enforced the state's procedural default rule in denying leave to appeal from the denial by Judge Jobes of Wilson's motion for relief from judgment. Counsel for petitioner has not established cause for this default. The claim that Wilson's appellate counsel on his appeal of right was ineffective has itself been rejected on procedural default grounds and that ruling, even if reviewed on the merits, is not erroneous in light of Judge Jobes' denial of the substantive issues.

■ 2. This outcome is mandated by the decisions of the United States Supreme Court. In *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Court affirmed the dismissal of McCleskey's habeas petition under Rule 9(b), stating that McCleskey had not satisfied the cause prong of the cause and prejudice standard for excusing the omission of a claim from his first habeas petition. The Court cited with approval its earlier decision in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), in which it held that the mere fact that petitioner's state court counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. The question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. *Id.*, 477 U.S. at 488, 106 S.Ct. at 718–19. The Court acknowledged that it was contemplating counsel "whose performance is not constitutionally ineffective." (*Id.*). Wilson's counsel attempts to build upon this, but he ignores the further requirement announced in *Murray v. Carrier* "that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." 477 U.S. at 489, 106 S.Ct. at 2646. As I have

forward in support of certain grounds, such as ineffective assistance of counsel.

already noted, Wilson did this, and this claim has been held to have been procedural defaulted, even by Judge Jobes.

■ Nor is Wilson able to establish that, as stated in *McCleskey*, he can show that a fundamental miscarriage of justice—the conviction of an innocent person—would result from a failure to entertain the claim. 499 U.S. at 502, 111 S.Ct. at 1474–75. Wilson himself contended in his first habeas petition that he sought only a possible verdict of guilty as to a lesser-included offense, not an acquittal. Even if "innocence" is expanded to mean only innocence of the greater charge, Wilson cannot prevail. Judge Jobes concluded that "[t]he evidence produced at trial was overwhelmingly against [Wilson]." I see nothing in the briefs of Wilson's present counsel or in the record which contradicts this assessment.

### III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

■ The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated May 12, 1994.

### APPENDIX

State of Michigan

In the Recorder's Court for the City of Detroit

The People of the State of Michigan, Plaintiff,

v.

Kenneth Wilson, Defendant.

Recorder's Court Case No. 79–05689

### *OPINION*

Hon. Clarice Jobes

On June 10, 1980, defendant was convicted by a jury on three counts of assault with intent to commit murder and one count of felony firearm. M.C.L. § 750.83; M.S.A. § 28.278; M.C.L. § 750.227b; M.S.A. § 28.424(2). The Court of Appeals subsequently affirmed his convictions. Defendant now brings a Motion for Relief from Judgment pursuant to MCR 6.500.

Defendant contends that he was denied the effective assistance of trial counsel on several grounds. To establish this claim, defendant must first show that counsel was deficient and made errors so serious that he was denied counsel as guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Stammer*, 179 Mich.App. 432, 446 N.W.2d 312 (1989). Second, defendant must show that he was prejudiced and that but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.*

Defendant first alleges that trial counsel was ineffective when she failed to make a motion to disqualify all Recorder's Court judges in a case where the complainant was a court employee. MCR 2.003 establishes the grounds and procedures by which a judge is to be disqualified. In general, a trial judge

may be disqualified upon a showing of actual bias or prejudice. *People v. Houston,* 179 Mich.App. 753, 446 N.W.2d 543 (1989). However, "the test is not whether or not actual bias exists but also whether there was 'such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.'" *Houston, supra* [citing *People v. Lowenstein,* 118 Mich. App. 475, 325 N.W.2d 462 (1982), quoting *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)]. In *Reno v. Gale,* 165 Mich.App. 86, 418 N.W.2d 434 (1987), the court held that legal or ethical bias does not exist simply because the trial judge was acquainted with a party as a local practitioner. Likewise by analogy, legal or ethical bias cannot be found to exist simply because complainant was an employee of the court.

Defendant has not shown any prejudice or bias on behalf of the trial judge, nor has he shown any appearance of impropriety. Without such a showing, a claim alleging disqualification of the trial judge or the entire Recorder's Court bench lacks merit and cannot support a claim for ineffective assistance of counsel.

Furthermore, if defendant demonstrated bias on behalf of the trial judge, disqualification of one judge is not in itself sufficient to disqualify the entire bench. *In the Matter of Hirsch,* 116 Mich.App. 233, 323 N.W.2d 349 (1982). When a trial judge is disqualified, subrule 2.003(C)(4) mandates that the action must then be "assigned to another judge of the same court."

Defendant does not cite, and the court is unable to find, a clear Michigan standard to disqualify an entire bench. After a review of the case law from other jurisdictions, guidance may be found in the Eighth Circuit Court Case *United States v. Poludnick* [Poludniak], 657 F.2d 948 (8th Cir.1981).

In *Poludnick* [Poludniak], the chief judge made a public statement that he would be talking to the Missouri U.S. Senators about obtaining additional funds for courthouse security. Three weeks later, the chief judge presided over an extortion case in which one of the senators was an alleged victim. Counsel moved for disqualification of the chief judge and all other district judges for the Eastern District. The appellate court found that there was no error in the chief judge's failure to disqualify himself and the entire bench of his district. The reasons given were two-fold. First, disqualification on this basis would suggest that all federal judges would have to disqualify themselves in cases involving members of Congress because they might appear to be partial to those who have the power of the purse. Secondly, the senator in *Poludnick* [Poludniak] was the victim of the crime, not a party to the action.

As in *Poludnick* [Poludniak], this complainant was the victim of the crime, not a party to the action. Furthermore, the jury was the finder of fact thereby eliminating any appearance of impropriety. Defendant has not shown any prejudice or bias on behalf of the trial judge nor has he shown any appearance of impropriety to justify disqualification of the trial judge or the entire Recorder's Court bench. For all of the above reasons, trial counsel was not ineffective by failing to make a motion for disqualification. Defendant's claim is without merit.

Defendant next alleges that the trial court and his trial counsel failed to inform him that he would have been entitled to a mistrial had he not waived his right to a twelve member jury. During deliberations, one of the jurors asked to be released in order to attend an out-of-state funeral. Defendant believes that the court was obligated to inform him of a right to a mistrial if he chose not to release this juror.

Before a court declares a mistrial, it should conduct a hearing on the record to thoroughly consider the situation and make explicit findings that no reasonable alternative exists. *People v. Dry Land Marina, Inc.,* 175 Mich. App. 322, 437 N.W.2d 391 (1989). In *Dry Land Marina,* rather than declaring a mistrial due to release of a juror, the trial judge decided to call back an alternate juror to replace a juror who became ill. Mistrial was not a foregoing conclusion. A continuance could have been granted to provide for a temporary absence or an alternate juror could have been recalled. The court had no

obligation to tell the defendant that he has a right to a mistrial. The trial court did, however, have an obligation to inform defendant of his right to a unanimous jury verdict. Defendant claims that the trial court denied him this right by coercing waiver of a juror. The right of a unanimous jury verdict may be waived upon a showing of specific knowledge and intentional abandonment of that right. *People v. Miller,* 121 Mich.App. 691, 329 N.W.2d 460 (1982). The juror informed the court that a death occurred in his family. He then asked to be excused from further deliberation. The record reflects that the trial judge informed defendant of his right to a unanimous jury verdict during opening instruction and prior to releasing the juror. When the court addressed counsel on this matter prior to the release, defendant and his trial counsel had already discussed the right and were prepared to stipulate to an 11 member jury. Defendant was informed of his constitutional right to a unanimous jury verdict and intentionally abandoned that right. The trial court did not violate defendant's right to a fair trial by coercing waiver of this juror.

Defendant also believes that trial counsel was ineffective when she elicited testimony involving an altercation between defendant and a police officer following arrest. Defendant claims that the testimony was of no strategic benefit and could only lead the jury to conclude that they should convict him because he hit a police officer. Trial counsel elicited testimony of an altercation to support a theory of voluntary intoxication. Assault with intent to commit murder requires that the prosecution prove beyond a reasonable doubt that defendant possessed a specific intent to kill the victim. *People v. Rockwell,* 188 Mich.App. 405, 470 N.W.2d 673 (1991). Voluntary intoxication can act to negate the specific intent required for conviction on the charged offenses. Defense counsel elicited testimony from Sgt. Golowski on cross-examination to show that defendant was uncooperative at the time of his arrest due to intoxication. "Uncooperative" was shown in the form of an altercation. Defense counsel again referred to the testimony of the alter-

cation in her closing argument as she attempted to negate the element of specific intent.

The record reflects that counsel elicited this testimony based on trial strategy. Inquiry based on a strategic decision will not suffice as evidentiary support for a claim. *People v. Hunter,* 141 Mich.App. 225, 367 N.W.2d 70 (1985). Furthermore, to establish a claim of ineffective assistance of counsel, defendant must show that but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different.

The evidence produced at trial was overwhelmingly against this defendant. Defendant admits that he was involved in a shooting. While he claims that the shooting was not deliberate, the testimony shows that he intentionally aimed a gun at each one of the victims. One victim was left a paraplegic from a gunshot wound to the neck, her brother was left lying in a pool of blood after being shot in the face, and the third was spared when the gun failed to discharge. Defendant has failed to demonstrate that counsel erred by eliciting testimony of an altercation at trial nor has he demonstrated how the outcome of the case would have been different without this testimony. Defendant was convicted of the charged offenses based on the evidence produced at trial. He was not convicted because he hit a police officer. Therefore, trial counsel was not ineffective when she elicited testimony involving an altercation between defendant and a police officer following arrest.

Defendant next alleges that the prosecutor violated his right to a fair trial by (1) referring to the fact that the evidence was not contradicted by defendant and (2) appealing to a civic duty to convict.

A prosecutor may argue that the evidence presented is uncontradicted even though the defendant is the only one who could have contradicted or challenged the evidence. *People v. Cummings,* 139 Mich.App. 286, 362 N.W.2d 252 (1984). Furthermore, a prosecutor's argument that the evidence produced at trial is not in dispute and is overwhelming, unrebutted, and consistent is not comment on defendant's failure to testify or produce evi-

dence. *United States v. Drake*, 885 F.2d 323 (CA 6, 1989). In the instant case, the prosecutor on rebuttal asked the jury to consider the evidence as presented. A remark that the facts "are not contradicted" is not improper. To forbid commentary by the government on the strength of its proofs would be to take the "argument" out of closing argument and reduce it to a resume of the evidence. *Drake, supra.* The commentary merely referred to the strength of the evidence presented at trial.

Defendant also claims that the prosecution appealed to a civic duty to convict. Civic duty arguments improperly inject issues into the trial that are broader than defendant's guilt or innocence of the charges in an effort to encourage jurors to suspend their own powers of judgment. *People v. Crawford*, 187 Mich.App. 344, 467 N.W.2d 818 (1991). The remarks made by the prosecutor urged the jury to reach a finding on the basis of the evidence and their own common sense and experience. *Id.* Based on the evidence produced at trial, the prosecutor's remarks did not suggest that the jury relinquish its fact-finding function and were proper. *People v. Fields*, 93 Mich.App. 702, 287 N.W.2d 325 (1979). The prosecution did not appeal to a civic duty to convict.

Defendant's third contention is that the trial court denied him a fair trial by threatening to hold defense counsel in contempt thereby causing a chilling effect on his attorney.

A delicate balance exists between the right of the trial judge to maintain discipline and decorum in the courtroom and the right of counsel to fulfill his obligation as an advocate. When an individual engages in a wilful disregard or disobedience of a court order and contempt can be clearly and unequivocally shown, a conviction for criminal contempt will be supported. *In re Contempt of O'Neil*, 154 Mich.App. 245, 397 N.W.2d 191 (1986).

Twice defense counsel argued with the trial judge. The second time was after a ruling. "Rulings of the court are to be followed and when they are not, the court should exercise its power of contempt or at least reprimand the offending person in the jury's presence." *People v. Brocato*, 17 Mich.App. 277, 169 N.W.2d 483 (1969). The jury was excused each time that defense counsel was warned that a possible contempt proceeding may result if she continued arguing with the court. The trial judge properly exercised her power to maintain discipline and decorum in her courtroom. Defendant was not denied his right to a fair trial when the trial court threatened to hold defense counsel in contempt.

Defendant submits in his third argument that the trial court denied him a right to a fair trial by precluding cross-examination on the possible defense of "unintentional discharge of a firearm." Defendant may be convicted of reckless discharge of a firearm based on a finding that carelessness, recklessness or negligence caused a firearm under his immediate control to be discharged so as to kill or injure another person. M.C.L. § 752.861; M.S.A. § 28.436(21). Trial counsel asked the complainant whether defendant intended to shoot her. The prosecution objected arguing that complainant could not testify as to defendant's state of mind. Counsel then rephrased her question and received an answer from the complainant.

Q (By Ms. Palmiere, continuing): Did he say anything to you? I'm going to kill you or anything along that line?

A I don't remember him saying I'm going to kill you, but standing there looking down the barrel of a gun if someone was mad at you, you know, what do you think?

The record clearly demonstrates that discharge of the firearm was not an accident. The testimony shows that defendant intentionally pointed the gun at each of the victims as he fired. Trial counsel was not precluded from establishing a defense of unintentional discharge of a firearm. Furthermore, defendant's sole defense presented in closing argument is based on voluntary intoxication. Defendant may not now raise a defense that was not raised at trial and that is not supported by the record.

Finally, defendant maintains that failure of appellate counsel to raise these issues deny him state and federal constitutional rights of

appeal. Defendant has not demonstrated that the above issues are meritorious. Therefore, failure to raise them on appeal did not deprive him of his state and federal constitutional right to an appeal. *People v. Oster (On Re-submission)*, 97 Mich.App. 122, 294 N.W.2d 253 (1980). Furthermore, even if defendant was deprived of the effective assistance of counsel in his first appeal, the sole remedy would be the grant of a new appeal. The trial court is not the proper forum to decide this issue.

For all of the above reasons, defendant's Motion for Relief from Judgment is hereby **DENIED.**

[Signature]
Recorder's Court Judge

Dated: August 5, 1992

## ORDER

At a session of said court held in the Frank Murphy Hall of Justice on AUG 04 1992

PRESENT: HONORABLE HON. CLAR-ICE JOBES

In the above-entitled cause, for the reasons set forth in the foregoing Opinion;

**IT IS HEREBY ORDERED** that defendant's Motion for Relief from Judgment be, and same is hereby, **DENIED.**

[Signature]
Recorder's Court Judge